## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**ROBERT N. REED,**

      **Plaintiff,**

**v.**                                    **Case No:  2:12-CV-00429-38-DNF**

**COMMISSIONER OF SOCIAL
SECURITY,**[1]

      **Defendant.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on August 7, 2012. Plaintiff, Robert N. Reed seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Supplemental Security Income disability benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, it is respectfully recommended that the decision of the Commissioner be **Affirmed** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. FED. R. CIV. P. 25(d).  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

## I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.  Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.   42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.   Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.  Procedural History

On August 18, 2009, Plaintiff filed an application for Supplemental Security Income asserting a disability onset date of September 30, 2006. (Tr. 126-30).  Plaintiff later amended his disability onset date to August 18, 2009. (Tr. 47). These claims were denied initially on October 6, 2009, and denied upon reconsideration on December 18, 2009. (Tr. 93-96, 101-102).   A hearing was held before Administrative Law Judge (hereinafter "ALJ"), M. Dwight Evans, on February 10, 2011. (Tr. 20-43, 108-119).   ALJ Evans issued an unfavorable decision on March 11, 2011, finding that Plaintiff was not disabled. (Tr. 20-43, 108-119).   Plaintiff requested review of the ALJ's decision on March 22, 2011. (Tr. 17). On June 13, 2012, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4).   Plaintiff filed the instant action (Doc. 14) in the United States District Court on January 7, 2013 and the matter has been fully briefed and referred to the undersigned for issuance of a Report and Recommendation.

### C.  Summary of the ALJ's Decision

The primary issue for review by the ALJ, regarding Plaintiff's insured status, was whether Plaintiff was disabled under the Social Security Act. (20 C.F.R. 1614(a)(3)(A)) (Tr. 23). To determine whether Plaintiff met this requirement, the ALJ applied the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act. (20 C.F.R. 416.920(a)).  (Tr. 20-43). At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 18, 2009. (Tr. 25). At step two, the ALJ found that Plaintiff suffered from the severe impairments of "history of cervical fusion and lumber spondylosis." (Tr. 25).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (20 C.F.R. 404.1520(d), 404.1526, 416.920(d), 416.925, and 416.926) (Tr. 29).   At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b), except that

> Plaintiff should only lift/carry up to 10 pounds frequently and 20 pounds occasionally; stand or walk for about 6 hours in an 8 hour work day; sit for about 6 hours in an 8 hour work day; perform unlimited pushing or pulling for lifting or carrying within the foregoing parameters; and occasionally climb ladders, ropes or scaffolds; [h]owever, Plaintiff must avoid concentrated exposure to vibration. (Tr. 31).

At step four, the ALJ found Plaintiff's RFC satisfies the physical and mental demands of his past relevant work as a professional drummer-vocalist (Tr.39-40).  The ALJ concluded that Plaintiff was not disabled as of August 18, 2009 (Tr. 40).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### II.  Review of Facts and Conclusions of Law

### A.  Background Facts

Plaintiff was born on July 30, 1960. (Tr. 126), and was fifty years old on the date of the hearing. (Tr. 126).  He graduated high school and is married. (Tr. 126, 147).  Prior to the date of the hearing, his past relevant work consisted of being a professional drummer-vocalist for 15

years. (Tr. 48, 149-155).   The last time Plaintiff worked as a drummer-vocalist was on New Year's Eve 2008. (Tr. 48). Plaintiff testified that he attempted to work at a video store after he stopped drumming, but "had to leave within an hour because [his] pants had gotten blood soaked," due to "cartilage pressing into [his] capillaries …[causing him to] bleed in [his] anal." (Tr. 49, 54-55). Plaintiff also testified that he has 6 herniated lumbar discs causing a cascade effect up his spine. (Tr. 50)

In the early 1980s, Plaintiff's neck was crushed by a shipment of falling food product while stocking shelves in a store (Tr. 53). Plaintiff testified that he had surgery to repair the condition, where bone from his hip was "put into his neck," and that protective glue was not used during this procedure. (Tr. 53).

In 2003, Plaintiff was on tour with his band performing as a drummer-vocalist. (Tr. 66). During this time period, Plaintiff's back was injured in an explosion on the tour bus. (Tr. 66). Plaintiff stated that an individual filled the air-conditioning unit with a flammable gas and when his father went to start the vehicle, it created an explosion. (Tr. 66). Plaintiff testified that when the bus "blew up" he was blown from his shoes and a television was blown from the back of the bus and into his lower back. (Tr. 66). Plaintiff testified that the initial pain from the injury was not severe, but increased later. (Tr. 66-67). Plaintiff's other ailments include rheumatoid arthritis, anxiety attacks, kidney stones, toothaches, and high blood pressure. (Tr. 55-56, 235, 239, 265). Plaintiff has prior tobacco use including smoking 2 packs of cigarettes for 20 years. (Tr. 233). Plaintiff has since quit his tobacco use in 2009. (Tr. 233).

Plaintiff testified that he experiences continuous neck pain at level 8 out of 10 and continuous back pain at level 10 out of 10 on the pain scale. (Tr. 53-54).   Plaintiff experiences pain radiating down his arms and legs. (Tr. 60-61, 158). Plaintiff does not regularly take his

medications or does not remember the medications he takes at home. (Tr. 287). Plaintiff testified that he does not prefer to take medication for his ailments because he is not a "pill person" and that he had previously formed an addiction to pain medication. (Tr. 65).

As of the date of the ALJ's decision, Plaintiff and his wife reside with one roommate. (Tr. 168-74, 184). Plaintiff is independent in attending to matters of personal care, hygiene, grooming and dressing. (Tr. 267). Plaintiff does not drive and occasionally accompanies his wife shopping. (Tr. 64-5, 187). Plaintiff does not perform housework or yard work. (Tr. 157). Plaintiff's daily activities include sitting in a La-Z-Boy-like "special" recliner chair for periods of 2 hours at a time, interrupted by brief periods of walking before returning to his chair. (Tr. 59, 61-2, 65). Plaintiff naps for periods of one hour or more while reclined in his chair. (Tr. 65, 179). Plaintiff's hobbies include playing video games and computers. (Tr. 233).

**B. Summary of Medical Evidence**

Plaintiff included medical evidence beginning one year prior to his onset date. The Court reviewed all of the medical evidence provided by Plaintiff, however, the Court will include a brief summary of the medical evidence for the years prior to the onset date of August 18, 2009, beginning July 5, 2008 through May 8, 2010.

On July 5, 2008, Plaintiff went to the emergency room (hereinafter "ER") at Physicians Regional Medical Center for aching abdominal flank pain. (Tr. 216-220). Plaintiff was examined by Lael Desmond, M.D. (Tr. 216). Plaintiff was diagnosed by Dr. Desmond with kidney stones and hypertension. (Tr. 219-20). Plaintiff was given a prescription for Vicodin and Ciprofloxacin to alleviate his symptoms (Tr. 219-220). On August 16, 2008, Plaintiff visited the ER at Physicians Regional Medical Center complaining of aching abdominal flank pain. (Tr. 206). Plaintiff was diagnosed by Michelle Pleasant, M.D with a urinary tract infection. (Tr. 209).

Dr. Pleasant prescribed Plaintiff with Tylenol and antibiotics and discharged Plaintiff home, (Tr. 210). On September 26, 2008, Plaintiff visited the ER at Physicians Regional Medical Center complaining of chest pain (Tr. 199). Plaintiff saw admitting physician, Charlene Deluca, M.D., in addition to staff physician Todd Carlson, M.D. (Tr. 201-4). Dr.'s Deluca and Carlson ordered chest X-Rays and EKG testing, which came back negative. (Tr. 203). Plaintiff was diagnosed with palpitations, hypertensive urgency, and hypothyroid. (Tr. 203). Plaintiff was discharged home the following day on September 27, 2008.

On February 10, 2009, Plaintiff went to his primary care physician, Kirk DeMartino, M.D. for a follow-up assessment of hypertension and hypothyroidism. (Tr. 229-231). Dr. DeMartino noted that Plaintiff was non-compliant with his prescription of levothyroxine for his hypertension due to side-effects. (Tr. 229). Dr. DeMartino ordered Plaintiff to continue his prescription of metroprolol and lisinopril and added amlodipine to treat his hypertension and hypothyroidism. (Tr. 231). In addition, Dr. DeMartino ordered Plaintiff to undergo a thyroid stimulating hormone (hereinafter "TSH") test in three months.'(Tr. 231).

On July 29, 2009, Plaintiff visited the ER at Physicians Regional Medical Center complaining of low back pain and claiming that he had a history of the same. (Tr. 193-8). Plaintiff saw Dr. Carlson, who ordered an X-ray. (Tr. 198). Dr. Carlson diagnosed Plaintiff with a "fatty liver, multiple bone islands, multiple Schmorl's node, annular bulges at all levels with multilevel spinal stenosis and neural foramina stenosis most advanced at L3-L4." (Tr. 198). Plaintiff was given a prescription for pain and muscle relaxing medication. (Tr. 197). Plaintiff was discharged to home the same day. (Tr. 193). On September 1, 2009, Plaintiff went to see his primary care physician, Dr. DeMartino for management of hypothyroidism and hypertension. (Tr. 227-228). Dr. DeMartino noted that "in the interim of his last office visit [Plaintiff] has

again gone to the emergency room for back pain [and] [n]o particular treatment was recommended." (Tr. 227). Dr. DeMartino noted that, concerning Plaintiff's hypertension, Plaintiff's blood pressure was near normal at 128/86. (Tr. 227). Regarding Plaintiff's hypothyroidism, Dr. DeMartino ordered a future TSH test. (Tr. 227). Dr. DeMartino also recommended a follow-up visit in six months' time to monitor Plaintiff's cholesterol. (Tr. 227).

On February 18, 2010, Plaintiff visited the ER at Physicians Regional Medical Center complaining of chest pain. (Tr. 284). Prashanth Reddy, M.D. ordered EKG and CT scans of Plaintiff, which came back negative. (Tr. 292-324). Plaintiff was diagnosed by Dr. Reddy with atraumatic chest pains. (Tr. 284). Plaintiff was held overnight for observation and was released the following day on February 19, 2010. (Tr. 284). On April 2, 2010, Plaintiff went to the ER at Physicians Regional Medical Center complaining of an anxiety/panic attack. (Tr. 270). Steve Larkin, M.D. diagnosed Plaintiff with acute anxiety and prescribed Xanax to relieve his symptoms. (Tr. 274). Dr. Larkin discharged Plaintiff home on the same day and ordered a follow-up evaluation with Plaintiff's primary care physician, Dr. DeMartino. (Tr. 270, 277).

On May 8, 2010, Plaintiff visited the ER at Physicians Regional Medical Center complaining of a toothache. (Tr. 262). Dr. Carlson diagnosed Plaintiff with dental caries, gingivitis, and acute dental pain. (Tr. 265). Dr. Carlson prescribed ibuprofen to relieve Plaintiff's symptoms and referred Plaintiff to follow-up with a dentist. (Tr. 261, 266).

### C. State Agency Evaluations

On September 26, 2009, Plaintiff visited Neil Johnson, M.D. for a disability examination for the Florida Department of Health Office of Disability Determinations. (Tr. 233). Dr. Johnson found Plaintiff to have severe pain syndrome, hypertension, and history of kidney stones. (Tr. 235). Regarding Plaintiff's severe pain syndrome, Dr. Johnson concluded that,

> Plaintiff has significant loss of motion in his neck and back, paravertebral muscle spasm of the lumbar spine, tenderness in the neck, numbness in the area of L5 of the right leg and in the area of C6 of the left arm, possible weakness in the arms and legs, and great difficulty moving about (Tr. 235).

On October 6, 2009, a Physical Residual Functional Capacity Assessment (hereinafter "RFC") was completed by Michael Carter. (Tr. 77-84). Mr. Carter determined that,

> Plaintiff should only lift/carry up to 10 pounds frequently and 20 pounds occasionally; stand or walk for about 6 hours in an 8 hour work day; sit for about 6 hours in an 8 hour work day; perform unlimited pushing or pulling for lifting or carrying within the foregoing parameters; and occasionally climb ladders, ropes or scaffolds. (Tr. 78-83).

Mr. Carter determined that Plaintiff's disabling conditions consisted of cervical and lumbar degenerative disc disease, in addition to hypertension. (Tr. 77).

On the same date, October 6, 2009, an initial Disability Determination and Transmittal was completed by Michael Carter. (Tr. 85). Mr. Carter determined that Plaintiff's disabling conditions consisted of the back disorder, degenerative disc disease, and essential hypertension. (Tr. 85).

On December 15, 2009, a re-consideration Disability Determination and Transmittal was completed by Larry Griffin. (Tr. 86). Mr. Griffin determined that Plaintiff had the disabling conditions of degenerative disc disease in his back and essential hypertension. (Tr. 86). On the same date, December 15, 2009, an RFC was completed by Robert Steele, M.D. (Tr.239). Dr. Steele diagnosed Plaintiff as having degenerative disc disease and hypertension, noting that,

> Plaintiff should only lift/carry up to 10 pounds frequently and 20 pounds occasionally; stand or walk for about 6 hours in an 8 hour work day; sit for about 6 hours in an 8 hour work day; perform unlimited pushing or pulling for lifting or carrying within the foregoing parameters; and occasionally climb ladders, ropes or scaffolds; [h]owever, Plaintiff must avoid concentrated exposure to vibration. (Tr. 239-40).

In citing the evidence to support his conclusion, Dr. Steele noted that Plaintiff had degenerative disc disease and chronic neck and lower back pain. (Tr. 240). Dr. Steele also noted that there was "0 specific injury, C spine fusion occurring in 1994, L spine spondylosis, gait, and severe difficulty heel and toe walking." (Tr. 240).

### D. Specific Issues

Plaintiff raises four issues on appeal.  As stated by Plaintiff, they are:  (1) the ALJ erred by failing to request an opinion of Plaintiff's function-by-function limitations from treating physician Dr. Carlson; thereby failing to properly develop the record; (2) The ALJ's residual functional capacity finding is unsupported by substantial evidence (3) the ALJ's credibility determination is unsupported by substantial evidence; and (4) The ALJ's Step 4 determination is unsupported by substantial evidence. (Doc. 14 at 1).

### 1.    Consideration of Evidence Submitted by Dr. Carlson

Plaintiff asserts that the ALJ erred by not requesting an opinion of Plaintiff's function-by-function limitations from Dr. Carlson as a treating source; thus, failing to properly develop the record. (Doc. 14 at  9). Plaintiff relies on *Couch v. Astrue,* stating that "[m]edical sources should be re-contacted when the evidence received from that source is inadequate to determine whether the claimant is disabled." *Couch v. Astrue,* 267 Fed. App'x 853, 855 (11 Cir. 2008) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). In addition, Plaintiff relies on 20 C.F.R. §416.912(e)(1), stating that the ALJ will "seek additional evidence or clarification from a medical source when the report from…[a] medical source contains a conflict or ambiguity that must be resolved." (Doc. 14 at 9-10).[2]

---

2 While still relevant at the time of the ALJ's decision, 20 C.F.R. § 416.912(e) has since been amended to remove the requirement to re-contact the treating source. 20 C.F.R. § 416.912(e) (2013).

The Commissioner argues that Dr. Carlson was not a treating source, and therefore the regulation requiring re-contact does not apply. (Doc. 15 at 6). Additionally, the Commissioner argues that there is no conflict or ambiguity in Dr. Carlson's report and the report is based on medically acceptable clinical and laboratory diagnostic tests. (Doc. 15 at 6).

The regulations state that an ALJ will consider opinions from medical sources…"[however], the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. § 416.927(d)(2). In determining whether an individual is disabled, "the court always considers the medical opinion . . . together with the rest of the relevant evidence receive[d]." § 404.1520(c) (emphasis added). Moreover, unless there are evidentiary gaps which result in unfairness and clear prejudice, courts will not question the ALJ's development of the record. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

In the instant case, Plaintiff did not identify any evidentiary gaps in Dr. Carlson's report. The ALJ noted that regardless of whether Dr. Carlson[3] is a treating physician or not, the only apparent conflict or ambiguity in Dr. Carlson's report is based upon Plaintiff's own statements complaining of pain at a level of 10 out of 10, while simultaneously describing the pain as being of moderate intensity. (Tr. 33). Here, any conflict or ambiguity is not based on Dr. Carlson's professional medical opinion, but rather, Plaintiff's own statements regarding his pain. Consequently, the ALJ did not err and had the authority to base his decision of disability on substantial evidence provided in the record.

---

[3] Dr. Carlson was an emergency room physician and therefore his designation by Plaintiff as a "treating physician" is questionable. *See*, 20 C.F.R. § 416.902 (stating that a "[t]reating source means your own physician . . . or other acceptable medical source  . . . has provided you, with medical treatment or evaluation and who has . . . an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you  . . . have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)").

### 2.   Whether the RFC Assessment is Supported by Substantial Evidence

Plaintiff asserts that the ALJ's RFC finding is unsupported by substantial evidence because the ALJ afforded "great weight" to the opinion of a non-examining State agency review physician, Dr. Steele and incorporated Dr. Steele's opinion into the RFC determination. (Doc. 14 at 11). Plaintiff also argues that "[t]he opinion of a non-examining physician" is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Moran v. Comm'r of Soc. Sec.*, WL 2026084 (M.D. Fla. Apr. 19, 2010) (quoting *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990)); (Doc. 14 at 11).

In addition, Plaintiff argues that Dr. Steele's opinion contradicts the examination findings made by Dr. Johnson, who Plaintiff argues should have been afforded more weight. (Doc. 14 at 12). Plaintiff also relies on *Hoffman v. Astrue* stating, the opinions of "non-examining, reviewing physicians. . .when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Hoffman v. Astrue,* 259 F. App'x. 213, 218 (11th Cir. 2007); (Doc. 14 at 11).

The Commissioner responds that "an ALJ may reject any medical opinion if the evidence [in the record] supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987); (Doc. 15 at 8). Moreover, the Commissioner relies on *Flowers v. Commissioner*, where an ALJ is allowed to give greater weight to a consulting physician's opinion than a treating or examining physician's opinion where the non-examining physician's opinion is more consistent with the clinical evidence. *Flowers v. Commissioner of Soc. Sec.*, 441 Fed. App'x 735, 740 (11th Cir. 2011);(Doc. 15 at 9).

The regulations state that "an ALJ will consider opinions from medical source . . . [however], the final responsibility for deciding these issues is reserved for the Commissioner."

20 C.F.R. § 416.927(e)(2). In determining whether an individual is disabled, "the court always considers the medical opinions . . . together with the rest of the relevant evidence receive[d]." 20 C.F.R. § 404.1520b. Moreover, *Brown v. Shalala* advises that courts will not question the ALJ's development of the record unless it reveals evidentiary gaps which result in unfairness and clear prejudice. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

In making his findings, the ALJ determined that Dr. Johnson is a "non-treating examining source, who is not entitled to controlling weight." (Tr. 39). The ALJ finds that Dr. Johnson "relied heavily on the claimant's self-reporting, while the medical treatment evidence of the record fails to corroborate the claimant's self-reported severity" (Tr.39). The Code of Federal Regulations provides that,

> symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which you, your treating or non-treating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account. . . in reaching a conclusion as to whether you are disabled." 20 C.F.R. § 404.1529(c)(3).

The ALJ stated that Dr. Johnson does not appear to have rendered an explicit opinion regarding any specific functional limitations, but rather merely recounts the subjective-self reported limitations,

> tenderness at the neck, numbness in the left arm in the area of C6, cervical range of motion diminished by three-fourths in extension, approximately one-half in lateral flexion and approximately one-third in rotation, equivocal weakness in the arms and/or legs, paravertebral muscle spasm at the low back, lumbar range of motion diminished by more than two-thirds in forward flexion and by almost two-thirds in extension, numbness in the lateral right leg in the area of L5, and antalgic gait, equivocal weakness in the upper and/or lower extremities, observations of "a lot of pain" and "moderate difficulty" with getting on and off the examination table, "a lot of pain" with getting up from the chair and with walking across the room, and severe difficulty with heel and toe

> walking and an inability to hop, all of which [the claimant] attributed to a "severe pain syndrome. (Tr. 39).

Moreover, the ALJ found that Dr. Johnson's opinion is not well supported by his own medically acceptable clinical, diagnostic or laboratory findings and are inconsistent with Plaintiff's reported activities of daily living, thereby justifiably assigning it little weight. (Tr. 39).

The ALJ reviewed Dr. Steele's RFC analysis which stated that,

> Plaintiff should only lift/carry up to 10 pounds frequently and 20 pounds occasionally; stand or walk for about 6 hours in an 8 hour work day; sit for about 6 hours in an 8 hour work day; perform unlimited pushing or pulling for lifting or carrying within the foregoing parameters; and occasionally climb ladders, ropes or scaffolds; [h]owever, Plaintiff must avoid concentrated exposure to vibration. (Tr. 31).

The ALJ found that the assessment from Dr. Steele is consistent with the objective medical findings in the record, taken as a whole, and accepted the assessment from Dr. Steele as reasonable, most persuasive and, therefore, assigned it great weight. (Tr. 39). Accordingly, the ALJ did not err and his determination was supported by substantial evidence.

### 3. Whether the Credibility Determination is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in finding Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms not entirely credible because it is unsupported by substantial evidence. (Doc. 14. at 14). Plaintiff argues further that the ALJ's credibility determinations are conclusory and fail to provide clear and understandable language for the specific reasons for his decision. (Doc. 14 at 14-8).

Determining the credibility of a claimant is the duty of the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). If the ALJ fails to articulate reasons for discrediting subjective testimony, that testimony must be accepted as true. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). However,

a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court. *Foote v. Chater*, 67 F.3d at 1562. The Code of Federal Regulations requires that the ALJ evaluate the intensity and persistence of the symptoms based on all of the evidence of record. 20 C.F.R. § 416.929(c). The ALJ may discredit a claimant's subjective testimony regarding pain if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

In determining symptoms of pain, the Eleventh Circuit requires (1) evidence of an underlying medical condition and either (2) objective evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

In satisfying the first pain requirement, the ALJ found Plaintiff to have the severe impairments of a history of cervical fusion and lumbar spondylosis. (Tr. 25). The ALJ found the third requirement to be satisfied, holding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 32).

However, the ALJ called Plaintiff's credibility into question when looking at the lack of medical evidence or inconsistent medical evidence regarding the intensity, persistence, and limiting effects of the symptoms that Plaintiff alleged. (Tr. 32). Specifically, the ALJ found inconsistencies in Plaintiff's statements regarding his pain in light of the evidence provided throughout the entire record. (Tr. 32). The ALJ noted that Plaintiff testified that his neck pain was at a constant 8 on the pain scale, his back was a constant 10, he was unable to sit for more than 15 minutes, stand for more than "a couple" of minutes, or walk more than a block. (Tr. 37, 38). However, the ALJ compared these statements to Plaintiff's statements about his daily

activities of personal care, shopping, and playing computer and video games, in conjunction with the examinations by Dr. Carlson and Dr. Johnson and found inconsistencies, indicating a lack of credibility. (Tr. 38).

Moreover, the ALJ found Plaintiff's statements about his anal bleeding to lack credibility. (Tr. 37-38). The nature of the alleged symptom of anal bleeding is noted by the ALJ to be unsupported by any doctor or evidence in the medical record. (Tr. 37-8). Additionally, the ALJ recognizes that Plaintiff has the burden to provide such evidence to support his claim. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991); *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986); (Tr. 37-39). Accordingly, the ALJ did not err because he provided clearly articulated credibility findings and his determination was supported by substantial evidence.

### 4.   Whether the Step 4 Determination is Supported by Substantial Evidence

Plaintiff argues that the ALJ's step 4 determination is unsupported by substantial evidence because; (1) the ALJ erred in developing the record, determining Plaintiff's RFC, determining Plaintiff's credibility; and (2) the ALJ failed to determine whether as a drummer-vocalist, Plaintiff was able to avoid concentrated exposure to vibration as recommended by Dr. Steele and required by the RFC. (Doc. 14 at 18-9).

For the reasons given in the above paragraphs, the ALJ did not err in developing the record, determining Plaintiff's RFC, and determining Plaintiff's credibility.

Plaintiff asserts that in order to support a conclusion that he is able to return to his past work as a drummer-vocalist, the ALJ must consider all the duties of that work and evaluate Plaintiff's ability to perform them in spite of his impairments. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990); (Doc. 14 at 18). Plaintiff also asserts that the ALJ's determination

must contain "[a] finding of fact as to the physical and mental demands of the past job/occupation." *Coffin v. Comm'r of Soc. Sec.*, 2011 WL 806674 (M.D. Fla. Mar. 2, 2011) (quoting SSR 82-62); (Doc. 14 at 18). Further, Plaintiff argues that the ALJ is required "to make specific findings of fact regarding the 'strength, endurance, manipulative ability, mental demands and other job requirements of a claimant's past work." *Caponi v. Astrue*, 2009 WL 591433, at *21-22 (M.D. Fla. Mar. 5, 2009) (quoting SSR 82-62); (Doc. 14 at 18).

Plaintiff has the burden to prove his limitations prevent him from performing his past work as a drummer-vocalist. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001; *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991); *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986). In proving his case, Plaintiff also has the burden to provide any such evidence to support his claim. *Id*. Plaintiff is "the primary source for vocational documentation, and statements by [Plaintiff] regarding past work are generally sufficient for determining the skill level, exertional demands (emphasis added) and nonexertional demands of such work." 20 C.F.R. 416.920(a)(4)(iv), 416.960(b)(2); SSR 82-62.

Plaintiff failed to provide any evidence regarding whether any such "concentrated exposure to vibration" would occur in performing Plaintiff's past work as a drummer-vocalist. In making his determination, the ALJ had to rely on Plaintiff's description to determine the demands of Plaintiff's past relevant work as a drummer vocalist. (Tr. 40). In describing his past relevant work, Plaintiff provided substantial evidence to support the ALJ's finding that the past relevant work as actually performed did not involve demands in excess of his RFC assessment. (Tr. 40). Accordingly, the ALJ did not err and his determination was supported by substantial evidence.

**IT IS RESPECTFULLY RECOMMEDED:**

That the decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. §405(g).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida on August 19, 2013.


DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE



Copies furnished to:

Counsel of Record
Unrepresented Parties